UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES C.,[1] | ) |
|                 Plaintiff, | ) No. 20 CV 6592 |
| v. | ) Magistrate Judge Young B. Kim |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
|                 Defendant. | ) June 8, 2023 |

**MEMORANDUM OPINION and ORDER**

James C. seeks disability insurance benefits ("DIB"), asserting he is disabled by conditions related to his cervical and lumbar spine, knees, and shoulder, as well as diverticulitis and migraines. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for DIB. Before the court are cross motions for summary judgment. For the following reasons, James's motion is granted, and the government's is denied:

**Procedural History**

James filed a DIB application in December 2015 alleging disability onset in October 2012 following an on-the-job injury. (Administrative Record ("A.R.") 827.) His application was denied initially and upon reconsideration at the administrative level. (Id. at 627-36, 637-48.) He then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 690-91, 735-39.) James appeared with his

---

[1] Pursuant to Internal Operating Procedure 22, the court uses James's first name and last initial in this opinion to protect his privacy to the extent possible.

attorney at the May 2018 hearing, during which he and a vocational expert ("VE") testified. (Id. at 564-603.) The ALJ found in October 2018 that James was not disabled. (Id. at 653-65.) But the Appeals Council granted James's request for review and returned the case to the ALJ for a supplemental hearing. (Id. at 672-73.) At the supplemental hearing in February 2020, James again appeared with his attorney and testified along with a medical expert ("ME") and a VE. (Id. at 605-25.) The ALJ assigned James a light-duty residual functional capacity ("RFC") with additional limitations, but again found him not disabled. (Id. at 15-31.) This time the Appeals Council denied James's request for review, (id. at 1-3), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). James then sought judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 9).

## Analysis

James asserts that the ALJ failed to: (1) support his assessment of the opinion evidence with substantial evidence; (2) adequately consider James's limitations from migraines and concentration, persistence, and pace ("CPP") difficulties when assessing his RFC; and (3) sufficiently explain his finding that James's symptom descriptions are not consistent with the record. (R. 19, Pl.'s Mem. at 8-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and substantial evidence supports the decision, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). Nevertheless, the ALJ must "provide a 'logical bridge' between the evidence and his conclusions," *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021), supplying enough detail to "enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the arguments and the record under these standards, the court concludes that remand is required.

**A.     Opinion Evidence**

James's complaint about the ALJ's evaluation of the opinion evidence is not entirely meritorious but enough to warrant remand. A treating physician's opinion in cases filed before March 27, 2017, is generally entitled to "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). Yet the Seventh Circuit "uphold[s] all but the most patently erroneous reasons" for discounting such an opinion. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quotation and citation omitted). As such, "[o]nce contrary evidence is introduced," the opinion "becomes just one piece of evidence" the ALJ considers along with various factors, including: the length, nature, and extent of the treatment relationship;

3

frequency of examination; physician's specialty; types of tests performed; and consistency with and support for the opinion in the record. *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021); 20 C.F.R. § 404.1527(c). The court upholds an ALJ's decision to discount a treating physician's opinion after considering these factors if he "minimally articulated [his] reasons—a very deferential standard." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2009).

James quarrels with the ALJ's decision to afford zero weight to treating internist Dr. Victor Thomas's May 2018 opinion that, among other things, James cannot walk a block, would be absent from work more than five days a month, and needs to lie down for four hours, sit for just an hour, and stand and/or walk for two hours during an eight-hour workday. (A.R. 27, 2974-76, 2979.) In affording no weight to this opinion, the ALJ reasoned that Dr. Thomas cited "no supporting evidence . . . to support such extreme assertions," and that treatment records from Dr. Thomas's clinic do not "show such extreme limitations or that [James] even alleged them." (Id. at 27.) It is true that Dr. Thomas's opinion is more limiting when compared with other opinion evidence. But the ALJ's cursory explanation does not permit the court to trace the path between the evidence and his conclusion. Indeed, the ALJ did not discuss Dr. Thomas's treatment records at all when analyzing his opinion, let alone explain why they justify disregarding the opinion entirely. And because many of those records reflect James's reports of extreme pain—and in some cases hospitalization for the same—as well as references to his multiple spinal (and other)

4

surgeries, the court cannot conclude that this error is harmless.[2] (See, e.g., id. at 2394-97 (May 2016 appointment following up on ER visit for extreme pain), 2428-30 (May 2017 appointment following up on three-day hospitalization for severe back pain), 2422-25 (September 2017 progress note reflecting "severe" pain of 10/10).) The ALJ also did not consider the other requisite factors—including the length, nature, and extent of James's treatment relationship with Dr. Thomas or frequency of examination—even though several suggest that Dr. Thomas's opinion deserved at least some weight. *See* 20 C.F.R. § 404.1527(c) (listing factors); (see also A.R. 1122-36, 1255-73, 2381-2436 (reflecting James's treatment at Dr. Thomas's clinic multiple times in 2016, on numerous occasions in 2017, and at least three times in 2018)); *Kossart v. Colvin*, No. 14 CV 0384, 2016 WL 901296, at *4-5 (N.D. Ill. March 3, 2016) (remanding, among other reasons, because ALJ failed to consider requisite factors in giving treating physician's opinion no weight). On remand, the ALJ must build a "logical bridge" between the evidence and his conclusion regarding Dr. Thomas's opinion and revisit the RFC analysis as needed.

However, James's other complaints about the opinion evidence lack merit. First, the court does not find any error with the ALJ's decision to give no weight to treating physician Dr. Earl Frederick's January 2016 one-line opinion that James was "unable to work due to spinal injury." (R. 19, Pl.'s Mem. at 14 (citing A.R. 27,

---

[2] The ALJ did specifically refer to treatment records from Dr. Thomas's clinic elsewhere in his opinion, but even then he did not acknowledge their origin or discuss the severity of James's complaints. (See, e.g., A.R. 22 (citing July 2015 treatment note reflecting that James complained of knee pain but omitting severe and chronic nature of pain, which he rated at 10/10).)

5

1256).) In discounting that opinion, the ALJ reasoned that it was conclusory and concerned an issue reserved for the Commissioner. (A.R. 27.) Generally, a medical opinion on the claimant's ability to work deserves no special weight but cannot be ignored. 20 C.F.R. 404.1527(d)(1), (3); *Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012). The ALJ still must review the medical findings and other supporting evidence when considering such an opinion. 20 C.F.R. 404.1527(d)(1), (3); *Pagos v. Colvin*, No. 13 CV 4430, 2015 WL 1502923, at *5 (N.D. Ill. March 27, 2015). But this opinion followed James's first visit with Dr. Frederick, so there is little to support it, let alone to justify reversal.

James also unsuccessfully challenges the ALJ's decision to assign consultative orthopedic examiner Dr. Daniel Troy's February 2015 opinion partial weight, arguing that the ALJ should have specified which aspects of that opinion he found reliable and which he rejected. (R. 19, Pl.'s Mem. at 14.) But Dr. Troy simply opined that— from a worker's compensation standpoint—James had reached maximum medical improvement and was able to return to work without limitations in January 2013, (A.R. 3228), and the ALJ plainly rejected any notion that James could perform the heavy work he had previously performed by limiting his RFC to less than light duty, (id. at 19). The court thus agrees with the government that "whatever [James] seeks to establish through Dr. Troy's testimony, it offers little assistance [in] showing that he could not perform the light RFC as found by the ALJ." (R. 25, Govt.'s Resp. at 8.)

Finally, James complains that in rejecting the ME's "vocational-style" testimony regarding James's ability to rotate his neck, the ALJ left a "significant and

6

relevant gap in the available opinion evidence." (R. 19, Pl.'s Mem. at 14.) But the ALJ credited the ME's testimony that had James fully complied with physical therapy, he might have had a greater range of motion. (A.R. 28.) In any event, the ALJ assessed a neck limitation in the RFC, (id. at 19), and rejected only the ME's testimony concerning whether a limited range of motion would affect job performance, (id.; see also id. at 615-19). All of this was proper.

**B.     RFC Assessment**

James next argues that in assessing his RFC, the ALJ failed to consider his CPP and migraine-related limitations. When assessing the RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). James says that the ALJ failed to comply with this standard. With perhaps one exception, the court disagrees.

While James complains that the ALJ did not sufficiently consider his migraines, (R. 19, Pl.'s Mem. at 13), there are only a few scattered references to headaches across the several thousand pages that make up the record in this case, most of which fall outside the relevant period and none of which reflect the severe, persistent migraines about which he testified at the hearing, (see, e.g., A.R. 999-1003 (February 2012 ER visit for headache following lumbar puncture), 898-908 (April 2016 function report mentioning headaches with little more), 1782-85 (December 2017 ER visit for intractable headache and facial pain "either due to trigeminal

7

neuralgia or shingles infection"), 3399-3401 (March 2019 pain clinic visit during which James reported neck pain that caused severe headaches twice a week), 4936-38 (November 2019 ER visit in which James reported "acute nonintractible headache" (among other things) but left before completing the recommended CT).) Furthermore, not a single medical provider suggested a migraine-specific limitation, and James did not assert headaches or migraines as a condition that affected his ability to work when applying for DIB. (See id. at 889, 967-68, 959-74, 988-90, 991-93.) Simply put, the ALJ gave James's migraine-related allegations the level of attention they deserved, and substantial evidence supports the ALJ's decision in this regard.

The ALJ also examined much of the evidence James now highlights in support of his CPP arguments. When crafting the RFC, the ALJ concluded consistent with the ME's opinion that James should refrain from climbing ladders, ropes, or scaffolding, which the ME explained was ill-advised because James's pain could make him "distractible." (Id. at 614.) But the ME did not suggest any other CPP-driven restrictions, and besides Dr. Thomas, nor did any other medical professional. Notably, however, the ALJ did not discuss Dr. Thomas's opinion that James's pain would frequently interfere with his ability to perform even simple tasks. (See id. at 27, 2979.) And although the Seventh Circuit has held that unskilled work can accommodate some pain related CPP limitations, *see Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009), and each of the jobs the ALJ identified as suitable for James at step five is unskilled, (see A.R. 29), because the case is being remanded, the ALJ is directed to re-examine this issue too.

8

## C. Subjective Symptom Assessment

James's final argument is that the ALJ failed to properly evaluate his symptom allegations. An ALJ's symptom evaluation is generally entitled to great deference because he can observe the claimant's credibility firsthand. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb it if it is based on specific findings and evidence and not "patently wrong"—that is, so long as it does not "lack[ ] any explanation or support." *Id.* at 815-16 (citing *Elder*, 529 F.3d at 413-14); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (stating that judicial review of ALJ's symptom assessment is "extremely deferential").

James complains that in discounting his testimony, the ALJ improperly emphasized that his medical records did not reflect the "mundane fact" that his wife helped him tie his shoes and climb stairs and improperly determined that his daily living activities were too robust to support his symptom allegations. (R. 19, Pl.'s Mem. at 10.) An ALJ may question a claimant's credibility when his complaints are not reflected in the record, but daily living activities generally must be considered "with care," *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), because a claimant's "ability to struggle through" them "does not mean that []he can manage the requirements of a modern workplace," *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

The ALJ acknowledged that James's activities did not mean that he could work full-time but found that—viewed with the objective evidence and James's treatment—they "demonstrate[d] an ability to perform significant activity on a

9

regular and continuing basis." (A.R. 21.) For support, the ALJ pointed to James's representations in an April 2016 function report that he did not need reminders for personal needs and grooming and could prepare simple meals, go outside multiple times a day, use a computer to shop for clothes, and use public transportation. (Id.) But the ALJ fails to explain not only how these activities undercut his symptom allegations but also how they could be characterized as "significant," "regular," or "continuous." *See Gonzalez v. Colvin*, No. 12 CV 10262, 2014 WL 4627833, at *5 (N.D. Ill. Sept. 16, 2014) (holding that the ALJ erred in failing to explain why claimant's pain allegations were inconsistent with her limited activities); *see also Douglass v. Colvin*, No. 12 CV 504, 2013 WL 1828819, at *10 (N.D. Ill. April 30, 2013) (same).

Nor does the ALJ explain how the objective evidence and James's treatment demonstrate that he is capable of that level of activity. (A.R. 21.) Although treating physician opinions indicated James was able to perform sedentary work or even return to his past relevant work, the ALJ himself questioned the legitimacy of those opinions. (Id. at 20, 27 (giving the latter opinion by Dr. Troy only partial weight because "the evidence indicates he has further limitations") and 19 (ascribing an RFC of light work with additional restrictions).) As such, and without more, this court cannot trace a path from the evidence to the ALJ's conclusion.

For similar reasons the court agrees with James that the ALJ placed too much weight on James's delay in starting physical therapy after one surgery and his discharge from physical therapy for failure to attend scheduled sessions. (R. 19, Pl.'s

10

Mem. at 20.) An ALJ may consider noncompliance with recommended treatment modalities when evaluating the severity of a claimant's symptoms. *See Weaver v. Berryhill*, 746 Fed. Appx. 574, 579 (7th Cir. 2018) (reasoning that noncompliance "allowed the inference that the severity of [claimant's] symptoms would be diminished if she followed her doctors' advice"). But the ALJ must first "explore the claimant's reasons for the lack of medical care before drawing a negative inference" from "sporadic treatment or the failure to follow a treatment plan." *Shauger v. Astrue*, 675 F.3d 690, 676 (7th Cir. 2012); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (holding that "failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure").

The ALJ here failed to consider whether there were good reasons for James's delay in starting physical therapy. (See A.R. 20.) And while the ALJ acknowledged James's testimony that he stopped going to physical therapy in December 2015 because a nurse had acted unprofessionally toward him, when pointing out that the physical therapy notes do not mention any conflict and concluding from there that James's pain must not have been as bad as he says, (id. at 20-21), the ALJ ignored the extensive treatment James received and the fact that physical therapy was not always helpful for James, (see, e.g., id. at 1934-37 (February 2017 progress note indicating that physical therapy increased pain)); id. at 2483 (September 2017 progress note indicating no improvement in back pain with physical therapy); id. at 2095 (March 2018 physical therapy note indicating James was in too much pain for

11

therapy).) In short, to characterize James's treatment as sporadic or otherwise draw a negative inference from these isolated incidents despite a 13-volume medical record and multiple surgeries amounts to impermissible mischaracterization and/or cherry-picking of the record. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) ("ALJs are not permitted to cherry-pick evidence . . . to support their conclusions, without engaging with the evidence that weighs against their findings."); *see also Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009) (remanding where ALJ mischaracterized the record in concluding that claimant was not fully credible).

The ALJ also cited inconsistencies in James's testimony when discounting his symptom allegations. By way of example, the ALJ points to an April 2016 function report in which despite alleging problems with concentration, James indicated he can pay bills, handle a savings account, and use a checkbook, and despite alleging problems completing tasks, he can finish what he starts.[3] (A.R. 21 (citing id. at 898-908).) An "ALJ's credibility assessment need not be perfect; it just can't be patently wrong," *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 14, 2014) (citing *Schreiber v. Colvin*, 519 Fed. Appx. 951, 961 (7th Cir. 2013)), and even "a minor discrepancy, coupled with the hearing officer's observations of the claimant during the hearing, is sufficient to support an ALJ's finding that a claimant was incredible," *Bates*, 736 F.3d at 1098. But because this case is already being

---

[3] The ALJ's characterization of these inconsistencies is somewhat misleading. In the same function report, James states that he can pay attention for up to 30 minutes, and that his concentration is impacted when he is experiencing neck pain, which the ALJ does not mention but which helps explain the seemingly conflicting answers the ALJ highlighted in his decision. (A.R. 903.)

12

remanded, the ALJ must revisit his symptom evaluation to ensure he builds a logical bridge between the evidence and his conclusions regarding the same.

## Conclusion

For the foregoing reasons, James's motion for summary judgment is granted, the government's is denied, and this matter is remanded.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**

13